UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| DEBRA B.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:20-cv-00114<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Debra B.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434.  (*See* Compl. ¶ 1, Doc. No. 2.)  The Administrative Law Judge ("ALJ") denied her application, finding Ms. B. did not qualify as disabled.  (Certified Tr. of Admin. R. ("Tr.") 17–29, Doc. No. 17.)  The court[2] has carefully reviewed the record and the parties' briefs.[3]  Because the ALJ did not err in his evaluation of a treating physician's medical opinion, and substantial evidence supports the ALJ's findings, the decision is affirmed.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by her first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 13.)

[3] Pursuant to Civil Rule 7-1(g) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined based on the written memoranda, as oral argument is unnecessary.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). And the court may not substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In making this disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

PROCEDURAL HISTORY

Ms. B. applied for disability insurance benefits in November 2016, alleging disability beginning July 2, 2016. (Tr. 17, 182.) After an administrative hearing in July 2019, (*id.* at 36–74), the ALJ issued a decision finding Ms. B. not disabled and denying benefits, (*id.* at 17–29).

At step two of the sequential evaluation, the ALJ determined Ms. B. had the following severe impairments:

> obesity; chronic pain syndrome with underlying fibromyalgia, fatigue and headaches; degenerative changes of the cervical, lumbar, and thoracic spine: degenerative changes of pubic symphysis; osteoarthritis of multiple joints; small plantar calcaneal spur on the left; benign paroxysmal positional vertigo; degenerative changes of bilateral knees with bone-on-bone arthritis in the medial compartment of the right knee and with complete loss of joint space with associated periarticular osteophytes (status post right total knee arthroplasty) and severe narrowing of the posterior medial aspect of the left knee joint (status post left total knee arthroplasty).

(*Id.* at 19–20.) At step three, the ALJ found Ms. B.'s impairments did not meet or equal the severity of an impairment listing. (*Id.* at 22.) At step four, the ALJ determined Ms. B. had the residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently; sitting (with normal breaks) for a total of six hours in an eight-hour workday; and standing/walking (with normal breaks) for a total of about two hours in an eight-hour workday; frequent handling, finger[ing], and feeling with the bilateral hands; occasional engaging in the operation of foot controls with the bilateral lower extremities; occasional climbing ramps/stairs, balancing, and stooping; never climbing ladders/scaffolds, kneeling, crouching, and crawling; and never working at unprotected heights, with dangerous moving mechanical parts, and around vibrating work surfaces.

(*Id.* at 23.) With this RFC, the ALJ found Ms. B. capable of performing her past, relevant work as a tax examiner. (*Id.* at 28.) Therefore, the ALJ determined Ms. B. was not disabled. (*Id.*)

The Appeals Council denied Ms. B.'s request for review, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 1–3.)

## DISCUSSION

Ms. B. raises a single claim of error: she argues the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence of her treating physician, Dr. O'Brien. (Opening Br. 7, Doc. No. 22.)

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling

("SSR") No. 96-8p, 1996 SSR LEXIS 5, at *1. The ALJ determines the RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).

Because Ms. B.'s claim was filed before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 govern the ALJ's consideration of medical opinion evidence.[4] Under this framework, the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight [the ALJ] assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); *see also* 20 C.F.R. § 404.1527(c) (requiring the ALJ to evaluate every medical opinion and listing the factors to be considered in assigning weight to a medical opinion). The ALJ must give a treating physician's medical opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). This analysis is sequential, meaning "if the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins*, 350 F.3d at 1300. While an express finding with respect to this first question was once considered mandatory, the Tenth Circuit has since declined to remand where it could determine from the ALJ's decision that it "implicitly declined to give the opinion controlling weight." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

If the ALJ does not give a treating source opinion controlling weight, the ALJ must consider the level of deference to give it, using the factors in 20 C.F.R. § 404.1527(c). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided

---

[4] The Social Security Administration revised its rules regarding the evaluation of treating physician opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at *5844–45.

>and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). The ALJ's decision need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ must "give good reasons in the notice of determination or opinion for the weight that is given the treating physician's opinion." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(2). The court may not supply possible reasons for giving less weight to or rejecting the treating physician's opinion but may only evaluate the ALJ's decision on its stated reasons. *Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

Ms. B.'s treating physician, Dr. O'Brien, completed a physical and mental capacity assessment questionnaire in support of her application for benefits. (Tr. 498–502.) In determining Ms. B.'s RFC, the ALJ considered Dr. O'Brien's opinions from the questionnaire but assigned them "little wight." (Tr. 27.) First, the ALJ considered Dr. O'Brien's opinion that Ms. B. would "frequently experience severe symptoms that would interfere with her attention and concentration to perform simple work related tasks." (*Id.*) The ALJ found this opinion inconsistent with Ms. B.'s testimony that "her pain [was] essentially alleviated with pain medication" and her headaches were mild. (*Id.*) The ALJ also found the opinion "at odds with the consultative report, which document[ed] normal attention and concentration for assigned tasks." (*Id.*) Next, the ALJ considered Dr. O'Brien's opinion that Ms. B. was only able to sit for two hours and stand/walk for fifteen minutes during an eight-hour workday. (*Id.*) The ALJ

found this opinion "grossly inconsistent with the objective medical evidence," as well as Ms. B.'s "testimony regarding her activities of daily living that include[d] grocery shopping upwards of an hour." (*Id.*) The ALJ also found Dr. O'Brien's opinion that Ms. B. would miss work four or more days per month "purely speculative" and noted "Dr. O'Brien failed to identify what evidence she relied upon" in forming this opinion. (*Id.*) Finally, the ALJ considered Dr. O'Brien's opinion that Ms. B. was moderately limited in areas of mental functioning. (*Id.*) The ALJ stated this was "inconsistent with the consultative exam and the paragraph B analysis discussed above," as well as Ms. B.'s "activities of daily living that include reading for pleasure, managing finances, cooking, gardening, and socializing with friends on a weekly basis." (*Id.* at 27–28.)

Ms. B. challenges the ALJ's evaluation of Dr. O'Brien's opinions on numerous grounds, each addressed in turn below. Each of her arguments fails. The ALJ properly evaluated Dr. O'Brien's opinions under the applicable legal framework, and his findings are supported by substantial evidence.

First, Ms. B. contends the ALJ failed to state what weight he assigned to Dr. O'Brien's opinion. (Opening Br. 8, Doc. No. 22.) However, the ALJ explained he assigned Dr. O'Brien's opinion "little weight." (Tr. 27.) This statement makes it apparent the ALJ implicitly declined to give Dr. O'Brien's opinion controlling weight. *See Mays*, 739 F.3d at 575. Accordingly, the ALJ adequately stated the weight he gave to Dr. O'Brien's opinion.

Second, Ms. B. argues the ALJ's statement that "her pain is essentially alleviated with pain medication" mischaracterized her testimony. (Opening Br. 9, Doc. No. 22.) According to Ms. B., she testified her pain medications would not fully alleviate her pain and had side effects of headaches and nausea, and this testimony supports Dr. O'Brien's opinion regarding

limitations to her attention and concentration.  (*Id.* (citing Tr. 48–49).)  However, the hearing transcript substantially supports the ALJ's characterization.  Ms. B. testified she was taking a new medication which helped her pain for "[a]bout seven hours."  (Tr. 48.)  She testified that after seven hours, she would have to take hydrocodone, which caused side effects of headaches and nausea.  (*Id.* at 48–49.)  And she testified these two medications dropped her pain level to less than a four or five out of ten (sometimes as low as a zero or two), which was "tolerable" and something she could "live with."  (*Id.* at 49.)  The ALJ's statement that Ms. B.'s pain was essentially alleviated with medication is a fair characterization of this testimony, and the ALJ did not err by relying on this testimony in discounting Dr. O'Brien's opinion.

       Ms. B. also argues the ALJ ignored the nature of her fibromyalgia in rejecting Dr. O'Brien's opinion regarding the effect of her symptoms on her attention and concentration.  (Opening Br. 9–10, Doc. No. 22.)  She argues fibromyalgia is an impairment which tends to wax and wane, and the ALJ cannot solely rely on notations of improvement when assessing fibromyalgia.  (*Id.*)  However, the ALJ did not discount Dr. O'Brien's opinion based on isolated notations of improvement.  Rather, the ALJ found Dr. O'Brien's opinion inconsistent with Ms. B.'s own testimony regarding the effectiveness of her pain medications.  (Tr. 27.)  He also found it inconsistent with the results of the consultative examination, which documented normal attention and concentration.  (*Id.*)  This constitutes substantial evidence contradicting Dr. O'Brien's opinion, and it supports the ALJ's conclusion that Dr. O'Brien's opinion was inconsistent with other evidence in the record.  Further, there is no indication the ALJ cherry-picked evidence showing improvement.  Indeed, the only contrary evidence Ms. B. points to is her testimony that there were "seasons of the year that [her fibromyalgia was] worse, [and] seasons that [it was] better."  (Opening Br. 9, Doc. No. 22 (citing Tr. 50).)  But this testimony

does not specifically address limitations in her attention or concentration. Even assuming this testimony supports Dr. O'Brien's opinion, the court will not reweigh the evidence where the ALJ's findings were supported by substantial evidence.

Ms. B. next argues the ALJ lacked sufficient rationale for rejecting Dr. O'Brien's opinion regarding her sitting and standing limitations. (Opening Br. 10, Doc. No. 22.) She again contends the ALJ mischaracterized her testimony, asserting she never testified she could go grocery shopping for more than an hour. (*Id.*) At the hearing, Ms. B. testified that when she went grocery shopping, she "might try to cut [it] so it's not more than an hour," and she tried "to keep it to less than an hour." (Tr. 62.) The ALJ found Dr. O'Brien's opinion that Ms. B. could only stand/walk for fifteen minutes in an eight-hour workday inconsistent with Ms. B.'s "activities of daily living that includes grocery shopping upwards of an hour." (*Id.* at 27.) To the extent "upwards of an hour" differs from "not more than an hour," the difference is minor and inconsequential. The ALJ did not err in finding Ms. B.'s testimony on this point was inconsistent with Dr. O'Brien's opinion that Ms. B. was limited to only fifteen minutes of standing or walking. Moreover, Ms. B. does not challenge the ALJ's statement that this opinion was grossly inconsistent with the objective medical evidence. The ALJ provided sufficient rationale for discounting this opinion.

Finally, Ms. B. contends the ALJ erred in finding Dr. O'Brien's opinion that she would miss four days per month "purely speculative." (Opening Br. 11, Doc. No. 22.) Ms. B. points to evidence in the record which she argues supports Dr. O'Brien's opinion, including records showing she underwent several rounds of injection therapy and was assessed with severe fatigue. (*Id.* (citing Tr. 328, 455–56, 580, 586, 592, 602, 604, 638, 641, 643, 867–68).) She also points to her own testimony that she took a six-month leave of absence from her prior job "because she

had been having trouble getting to work." (Tr. 43–44.) However, the ALJ correctly noted Dr. O'Brien "failed to identify what evidence she relied upon" in forming this opinion. (*Id.* at 27; *see also id.* at 499.) This goes to the "supportability" factor, which requires the ALJ to consider the degree to which the medical source "presents relevant evidence to support a medical opinion" and provides an explanation for the opinion. 20 C.F.R. § 404.1527(c)(3). There is no indication Dr. O'Brien based her opinion on the evidence Ms. B. now cites, which includes records from other providers. (*See, e.g.*, Tr. 328, 580, 586, 592, 602, 604).) Where Dr. O'Brien provided no explanation regarding the basis for this opinion, the ALJ did not err in concluding her opinion was speculative and unsupported.

Ms. B. has failed to identify any error in the ALJ's evaluation of Dr. O'Brien's opinion. As set forth above, the ALJ properly evaluated Dr. O'Brien's opinion based on the relevant factors of consistency and supportability, and substantial evidence supports the weight given to Dr. O'Brien's opinion.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 11th day of March, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge